UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 20-22477-CIV-MORENO**

KENNETH HAAVE, on behalf of himself
and others similarly situated,

    Plaintiff,

v.

ALL AMERICAN SECURITY SERVICES, INC.,
a Florida Corporation, and SERGIO SALAS, individually,

    Defendants.
_____/

## MOTION FOR APPROVAL OF FLSA SETTLEMENT
## AND DISMISSAL WITH PREJUDICE

Plaintiff, KENNETH HAAVE, and Defendants, ALL AMERICAN SECURITY SERVICES, INC. and SERGIO SALAS, respectfully request the Court approve the parties' Settlement Agreement attached hereto and dismiss this action with prejudice, retaining jurisdiction for thirty (30) days to enforce the terms of the parties' settlement:

1. Plaintiff alleged in the instant case file under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, that between late December 2019 and March 2020, he performed non-exempt work as an hourly Account Manager in Defendants' security services business based upon a regular rate of $13.00/hour at two properties serviced by Defendants: (i) Las Ramblas, located at 9934 NW 10th Street, Miami, Florida 33172; and (ii) Jungle Island, located at 1111 Parrot Jungle Trail, Miami, Florida 33132, with Plaintiff's primary job duties consisting of the following non-exempt tasks: (a) driving between the two properties and collecting timesheets and carrying out scheduling; (b) meeting on a daily basis with Defendants' Site Supervisors, Property Managers,

and Security Personnel at the two properties; and (c) checking that the Las Ramblas and Jungle Island properties were working at full capacity.

2. More specifically, as set forth in Paragraphs 15 and 18 of the Complaint and Plaintiff's Statement of Claim, Plaintiff alleged that between approximately late December 2019 and March 2020, he regularly worked six (6) to six (7) days per week for Defendants with regular start times as early as approximately 6:00 a.m. and stop times that ranged between approximately 9:00 p.m. and midnight but was paid straight-time wages for hours worked in excess of Forty (40) hours per week, such that based upon Plaintiff's good faith estimate of being owed an average of between approximately Thirty-Five (35) to Fifty-Five (55) overtime hours per week from Defendants at the half-time rate of $6.50 per hour [$13.00/2 = $6.50/hour] during a total of approximately Eleven (11) work weeks, Plaintiff's unpaid overtime wages could total between approximately $2,502.50 and $3,932.50 [$6.50/hour x 35-55 OT hours/week x 11 weeks = $2,502.50-$3,932.50].

3. In late June 2020, Defendants' Counsel, Jay E. Kreutzer, Esquire, contacted Counsel for Plaintiff, and the parties began exchanging information about Plaintiff's claims and Defendants' defenses, including but not limited to Defendants asserting, *inter alia*: (a) Plaintiff was caught "overbilling" ALL AMERICAN SECURITY SERVICES, INC. which led to Plaintiff's resignation; (b) Plaintiff and other employees used to a computer program to clock in and out which Defendants asserted differed substantially from handwritten time sheets Plaintiff submitted; and (c) when Plaintiff's employment ended, Defendants voluntarily paid Plaintiff $2,000.00 as a goodwill gesture.

4. After reviewing time and compensation records from Plaintiff's employment, the "Track Tik" app/electronic time keeping system implemented by ALL AMERICAN SECURITY

SERVICES, INC., a $900.47 check issued to Plaintiff during his employment which originally bounced but was later resolved, and information in Defendants' records about the hours recorded as having been worked by Plaintiff—versus Plaintiff's good faith estimates of his weekly hours which Plaintiff estimated to range between approximately Seventy-Five (75) to Ninety-Five (95) hours per week—the parties engaged in settlement negotiations despite the defenses which Defendants maintained could ultimately prevail as a matter of law and/or trial in this matter, with Defendants recognizing that protected litigation in this case would be expensive and involve uncertainty, and with Plaintiff agreeing to a compromise to resolve his underlying claims as well as Defendants agreeing to a resolution of Plaintiff's separate claim for attorneys' fees and costs pursuant to 29 U.S.C §216(b).

5. The Parties jointly submit that the settlement memorialized in the written Settlement Agreement being filed for review and approval with the Court is a fair and reasonable resolution of the dispute between the parties and was reached through arms-length negotiations. Both Plaintiff and Defendants were represented by counsel throughout the negotiation process and the parties agree, based on the amounts of Plaintiff's claims, the facts reflected in Defendants' records, and the cost of litigation, that their settlement represents a fair and reasonable resolution of Plaintiff's claims.

## MEMORANDUM OF LAW

**I.  Legal Standards Governing Approval of FLSA Settlements**

Pursuant to *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982) and its progeny, claims for back wages arising under the FLSA may only be validly settled or compromised with the approval of a court (or the U.S. Department of Labor), with the inquiry being whether the settlement reflects a reasonable compromise of the parties' differing legal

positions, interests, benefits, and rights, along with certain policy considerations. *Lynn's Food Stores, Inc.,* 679 F.2d at 1354.  More specifically, the Eleventh Circuit held in *Lynn's Food:*

> "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees.  First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."

*Id.* at 1352-53.

Where parties seek court approval of an FLSA settlement and concur that it constitutes a fair and reasonable compromise of their respective interests and positions, there is a "strong presumption" in favor of approval.  *See, e.g.*, *Dail v. George A. Arab, Inc.,* 391 F.Supp. 2d 1142, 1146 (M.D. Fla. 2005).

II. **Approval of the Parties' Settlement Agreement Is Fair and Reasonable Pursuant to *Lynn's Food***

Despite the parties' disagreement about the numbers of hours Plaintiff actually worked each week between approximately late December 2019 and March 2020, and thus the amount of Plaintiff's claims and the potential merit of Defendants' defenses, under the parties' Settlement Agreement, Plaintiff will receive a total from Defendants of $4,550.00, before taxes, for his underlying claims which is broken down as $2,275.00 for alleged unpaid overtime wages, less applicable tax withholdings, and $2,275.00 as consideration for alleged liquidated damages, along with Defendants paying $500.00 for costs advanced by Plaintiff's Counsel (for the filing fee and service of process) and $3,950.00 in resolution of all of Plaintiff's claims for attorneys' fees, with the total lodestar of Plaintiff's Counsel, Keith M. Stern, Esquire, from 10.50 hours at the rate of

$450.00/hour being $4,725.00, such that the resolution reached in this case ensures that under the compromise between the parties, Plaintiff will have no out-of-pocket responsibility for either any fees or costs.

The parties advise the Court there has been no undue influence, collusion, or overreaching involved in negotiating this settlement. *See, e.g., Helms v. Central Fla. Reg. Hosp.,* No. 6:05-cv-383-Orl-22JGG, 2006 U.S. Dist. LEXIS 92994 at *11-12 (M.D. Fla. Dec. 21, 2006). In this regard, Plaintiff's agreement to accept $4,550.00 to resolve his underlying claims for alleged unpaid overtime wages and liquidated damages, which amount is separate from Plaintiff's attorneys' fees and costs, is a relevant factor in the Court's review of the parties' settlement for fairness because numerous Courts have held that where a "plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel. *Bonetti v. Embarq Management Co.*, 2009 U.S. Dist. LEXIS 68075 at *11-12 (M.D. Fla. Aug. 4, 2009).

Finally, the parties advise the Court that their Settlement Agreement attached to this Motion reflects every term of the parties' settlement, such that there are no side or other agreements, and consistent with *Lynn's Food*, the compromise reached in this case is fair and reasonable and should therefore be approved by the Court.

Plaintiff, KENNETH HAAVE, and Defendants, ALL AMERICAN SECURITY SERVICES, INC. and SERGIO SALAS, respectfully request the Court enter an Order: (a) approving the parties' Settlement Agreement; (b) dismissing this action with prejudice; and (c) retaining jurisdiction for thirty (30) days to enforce the terms of the parties' settlement.

Dated:  July 10, 2020                              Respectfully submitted,

**KEITH M. STERN**
Keith M. Stern, Esquire
Florida Bar No. 321000
E-mail:  employlaw@keithstern.com
LAW OFFICE OF KEITH M. STERN, P.A.
80 S.W. 8th Street, Suite 2000
Miami, Florida 33130
Telephone:  (305) 901-1379
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via e-mail on July 10, 2020 on all counsel of record on the attached service list.

**KEITH M. STERN**
Keith M. Stern

**SERVICE LIST**
**Kenneth Haave v. All American Security Services, Inc. and Sergio Salas**
**Case No. 20-22477-CIV-MORENO**
**United States District Court for the Southern District of Florida**

Jay E. Kreutzer, Esquire
FL. Bar No.: 987433
3041 NW 7 Street (#100)
Miami, Florida 33125
Telephone: (305) 541-2505
Fax: (305) 675-8344
E-mail:  Jay@Kreutzerlaw.com & kreutzerlaw@aol.com
Attorneys for Defendants